IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| IN RE BAYCOL PRODUCTS LITIGATION | § § | MDL N. 1431 |
| This Document Relates To: | § § | (MJD/SRN) |
| *MELINDA TORRES v. BAYER CORP.* *ET AL.* | § § | CASE NO. 04-4350 |

**PROSPECTIVE PLAINTIFFS AND SUCCESSORS-IN-INTEREST, NICOLE HAMPTON'S AND MELINDA TORRES', RESPONSE TO COURT'S ORDER TO SHOW CAUSE BY SATURDAY, JULY 30, 2011**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE OF SAID COURT:

COME NOW, the Plaintiffs, Nicole Hampton ("Hampton") and Melinda Torres ("Torres"), and file this their Response to this Court's Order directing them to show cause in writing how they intend to proceed with this case and in response to said Order would show the Court the following:

1. Joe Alfred Izen Jr., the current counsel for Plaintiffs Hampton and Torres has been ill for over six months, with what has been diagnosed as an "occult" NeuroEndocrine Tumor which has caused carcinoid syndrome symptoms since at least December 25, 2010. These symptoms include labile high blood pressure which comes on when Izen suffers cancer "flush," a swelling under the eyes and on both cheeks, and has ranged from 150 to 190 systolic pressure. Efforts to control the blood pressure with drugs have been unsuccessful because the Tumor creates and excretes excessive digestive and other hormones which cause swelling leading to an increased blood supply for the tumor where the swelling is locally and a dangerously high overall blood pressure for the rest of the body.

2. Initial treatment by a cardiologist, who prescribed ace

1

inhibitor drugs and then increased the dose, was not only a failure but lead to a crisis event which placed Izen in the emergency room of a Denver hospital just before a scheduled hearing in Federal Court in Denver Colorado on January 7, 2011. Izen discontinued the ace inhibitors after becoming aware that they posed a serious threat of cardiac arrest to any one who had an excreting tumor. Izen sought treatment from a Pulmonologist which had to be discontinued when the Pulmonologist prescribed anti-anxiety drugs and informed Izen that based on his diagnosis the blood pressure problem was "...stress related...."

    3. Rejecting these misdiagnosis and/or treatment failures Izen consulted with Gastroenterologist George E. Whalen M.D. in Houston, Texas who had extensive experience in treating the first stages of Cancer and Tumors of the GastorIntestinal Tract, the Colon, and the small and large Bowel. At first meeting Izen related his history to Whalen and informed Whalen that he had a tumor which was resistant to any blood pressure treatment. Whalen told Izen "...we will rule that out..." and began a series of tests and procedures.

    4. Whalen performed an initial Colonoscopy and Gastroscopy in February and March of 2011. Numerous polyps were cut out but they were diagnosed as benign by pathology. Izen underwent CT scan of the whole body which was negative for cancer, tumor, or metastases. Finally Izen underwent radioactive sandostatin injected assistive scintigraphy of the whole body. Based on the "uptake" of that injected fluid the Doctors, including Whalen, diagnosed Izen's condition as a NeuroEndocrine Tumor of the right

2

lower quadrant of the abdomen.

5. Izen's symptoms from December to March continued to worsen. Izen immediately underwent a PET Scan after the scintigraphy which was negative in April, 2011. Izen also underwent numerous blood tests which revealed excessive levels of hormones in his blood stream. Finally at Izen's request Izen underwent a second Colonoscopy on May 25, 2011. This time Dr. Whalen located and cut out six masses which were classified as "precancerous" and were differentiating into cancer of the colon. Within 24 hours Izen's symptoms greatly worsened and he went into carcinoid crisis. He was bedridden for 3 to 4 weeks thereafter. Then his symptoms started to lessen somewhat but remained worse than they had ever been before May 25, 2011. Dr. Whalen acknowledged that the primary tumor causing the blood pressure had not been found and that the precancerous masses were "...probably associated with..." the "occult tumor."

6. Dr. Whalen at Izen's request then ordered a double balloon endoscopy examination of the entire small bowel. This test required hospitalization with a team of three experienced anesthesiologists due to Izen's uncontrolled blood pressure and was performed on June 14, 2011. After 4 hours under general anesthesia the test was negative for any tumor or cancer.

7. Having run out of treatment options locally Izen was forced to consult with a NeuroEndocrine Tumor center and chose Ochsner Clinic in Kenner, Louisiana which is part of the L.S.U. Medical Center. On July 20, 2011 Izen traveled from Houston to Kenner to see NeuroEndocrine Tumor expert Dr. Woltering. Dr.

Woltering, after reviewing Izen's records, ordered more testing and indicated a "suspected" Neuro Endocrine Tumor of the lung which would allow the tumor excreted ectopic hormones to bypass the liver and get into the general blood stream due to the location in the lung where they were being excreted.

8.  Izen is scheduled to return to New Orleans for special testing during the weeks of August 8 through 15 and will then schedule another appointment with Dr. Woltering after the Dr. receives the results of the special tests he has ordered.

9.  Izen has limited his out of state hearings as much as possible so that he could be close to medical facilities and treatment. Izen has kept his clients Torres and Hampton informed of his condition. True and correct copies of Izen's medical records reflecting his second colonoscopy and the double balloon endoscopy procedure are attached hereto, marked Exhibits A and B, and are incorporated by reference.

10. Izen has contacted both of his clients Hampton and Torres and informed them of the show cause order entered by this Court directing a response from the Plaintiffs concerning how the Plaintiffs intend to proceed with this case. Izen offered to withdraw as attorney of record for the Plaintiffs and informed them that they had the option of attempting to locate new counsel who would take over the case. Izen's clients informed him that they were indigent, could not afford to hire other counsel, and did not believe they would be able to find alternative counsel who would be willing to take over the case even though Izen had retained and paid an expert previously to meet the proof stan-

dards imposed by the Federal Rules of Evidence and the applicable legal authority related to product liability for dangerous drugs. Both clients requested that Izen remain on the case and indicated they were hopeful that the court would allow more time for Izen's treatment to run its course so that Izen could recover and continue as their counsel.

11. The Ochsner center has extensive experience in localizing and treating hidden tumors. One of the center's specialties is neoprobe surgery in which the patient is injected with radioactive sandostatin (like the scintigraphy procedure) just prior to surgery and then a beeping probe, functioning like a geiger counter at the end of the surgical tool that cuts the patient open finds the tumor and it is excised. Izen anticipates that his condition will be finally diagnosed and he will receive comprehensive treatment, within the next 90 days.

12. Accordingly Plaintiffs request additional time for Izen's treatment before they proceed and remain open to telephonic, video digital attendance, or other means to hold the hearing concerning proof of their relationship to their own mother which has been demanded by the Defendant Bayer.

WHEREFORE, ABOVE PREMISES CONSIDERED, Plaintiffs pray that this Honorable Court entertain this Response to its previous Show Cause Order and that this Court enter an Order: (1) Discharging Plaintiffs from the Show Cause Order; (2) Directing that their counsel shall have additional time to undergo treatment for his medical condition which will thereafter allow him to proceed to represent the Plaintiffs in this case after his health improves;

and (3) Granting Plaintiffs such other and further relief, both in law and in equity, to which the Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

S/ Joe Alfred Izen, Jr.
---
Joe Alfred Izen, Jr.
Attorney for Plaintiff
TBC # 10443500
5222 Spruce Street
Bellaire, Texas 77401
(713) 668-8815
(713) 668-9402 FAX

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was sent to the following parties by electronic transmission and/or facsimile transmission on Monday, the 1st day of August, 2011:

Philip S. Beck
Adam Hoeflich
BATLIT BECK HERMAN PALENCHAR
& SCOTT, LLP
54 West Hubard Street, Ste. 300
Chicago, IL 60603
(312) 494-4400 TEL
(312) 494-4440 FAX

Susan A. Weber
James W. Mizgala
SIDLEY AUSTIN, LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000 TEL
(312) 853-7036 FAX

Paul J. Zidlicky
SIDLEY AUSTIN, LLP
1501 K Street, N.W.
Washington, D.C. 2005
(202) 736-8000 TEL
(202) 736-8711 FAX

Peter W. Sipkins (No. 101540)
DORSEY & WHITNEY LLP
50 South Sixth Street, Ste. 1500
Minneapolis, MN 55402
(612) 340-2600
(612) 340-2868 FAX

Douglas R. Marvin
WILLIAMS & CONNOLLY
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 FAX

Richard K. Dandrea
ECKERT SEAMENS CHERIN
USX Tower,
600 Grant St., 44th Floor
Pittsburgh, PA 15219
(412) 566-6000
(412) 566-6099 FAX

s/ Joe Alfred Izen, Jr.
---
Joe Alfred Izen, Jr.

TORRES.RSP/TK441